**Shenoa L. Payne,** OSB No. 084392
**SHENOA PAYNE ATTORNEY AT LAW PC**
735 S.W. First Ave., Ste. 300
Portland, Oregon 97204
Phone: (503) 914-2500
spayne@paynelawpdx.com

**Matthew C. Ellis**, OSB No. 075800
**LAW OFFICE OF MATTHEW C. ELLIS**
621 S.W. Morrison St., Ste. 1025
Portland, Oregon 97205
Phone: (503) 345-5497
matthew@employmentlawpdx.com

Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHRISTINE GETMAN,** an individual, | Case No.:  3:21-cv-01408-SB |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | Disability Discrimination |
| **OREGON HEALTH AND SCIENCE UNIVERSITY**, a public corporation of the State of Oregon; | (29 U.S.C. § 794(a); 42 U.S.C.§ 12132; 42 U.S.C.§ 18116; ORS 659A.142(4)) |
| Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff Christine Getman is a natural person who at all relevant times was a

resident of Portland, Oregon and a patient of defendant Oregon Health and Science University.

2.      Defendant Oregon Health and Science University (OHSU) is a public corporation

Page 1 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

of the state of Oregon. Defendant is an academic health center with several facilities in Oregon, including a hospital campus in Portland, Oregon that serves as its principle place of business.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of plaintiff's claims under 28 U.S.C. § 1331 and 1343. The Court has supplemental jurisdiction of plaintiff's state law claim. This court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. §1367.  Both federal and state law claims alleged herein arose from a common nucleus of operative facts, and the state claims are so related to the federal claims that they form part of the same case or controversy such that the actions would ordinarily be expected to be tried in one judicial proceeding.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). Defendant resides in this District and the events giving rise to this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

### Plaintiff's Medical Condition

5.      Plaintiff lives with Type II Spinal Muscular Atrophy (SMA), a rare neurological disorder and a progressive disease that causes quadriparesis (severe weakness in her muscles). Ms. Getman uses a ventilator for support, requires the use of a mobility device, has decreased lung capacity, and has severe limited functioning of her gross and fine motor functions.  Other than use of her index finger, Ms. Getman has severely limited use of the muscles below her neck.

6.      Due to her medical condition, Ms. Getman requires 24-hour support from a caregiver to perform the activities of daily living that she cannot perform due to her limited motor functions, including but not limited to eating, bathing, toileting, and other daily needs.

7.      Due to plaintiff's quadriparesis, plaintiff requires the use of a tracheostomy tube to

Page 2 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

clean and remove secretions from the airway and to more easily and safely deliver oxygen to her lungs.  Ms. Getman's tracheostomy tube must be suctioned and cleaned regularly so that it functions properly, allowing Ms. Getman to breath comfortably and safely. Due to her quadriparesis, Ms. Getman cannot independently suction or clean her own tube, requiring the assistance of a support person / caregiver to ensure proper and safe breathing.

8.      Due to her motor impairments, plaintiff depends on 24-hour support from a caregiver to communicate effectively.  If she is positioned incorrectly or her tracheostomy is suctioned incorrectly, she can become unable to speak due to her muscle weakness.  Furthermore, she is unable to use her cell phone or other communication devices independently.  Rather, her support person is necessary to set up her technology devices and position her body so that she can communicate efficiently and adequately.

9.      Although plaintiff's motor functioning is impaired, she has full sensation throughout her body. Ms. Getman's medical condition prevents her from sitting up, rising, or turning over independently.  Ms. Getman requires 24-hour support from a caregiver or support person to reposition her every 15 minutes in order to avoid significant pain from remaining in one position for too long. Repositioning also is necessary to prevent bedsores or other types of pressure injuries, which are painful and can result in dangerous infections.

**OHSU's Prior Notice of Plaintiff's**
**Medical Condition and Need for Accommodation**

10.      Plaintiff's disability and need for a 24-hour caregiver and/or support person is obvious.

///

Page 3 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

11.     Plaintiff is a long-time patient of OHSU hospital and medical clinics. Ms. Getman has been treated by several OHSU clinics, including but not limited to the OHSU hospital, OHSU Family Medicine clinic, the Women's Health Clinic at OHSU's Kohler Pavilion, and the Neurology Neuromuscular Clinic at OHSU's Center for Health and Healing.

12.     Defendant has specifically treated plaintiff's SMA and the details of plaintiff's medical condition are known to defendant and reflected in the medical records defendant maintains.  At all relevant times defendant knew or should have known of plaintiff's medical history and disability-related needs.

13.     Beginning in or around 2017, defendant started treated plaintiff's SMA with monthly infusion therapy, involving injections of a medication known as Spinraza, directly into the spinal canal. Because this method of administration involves a lumbar puncture, it increases the risk of an individual developing serious infections, such as bacterial meningitis.

14.     After receiving such a treatment in 2017, plaintiff developed bacterial meningitis and was admitted to the OHSU hospital for treatment. She responded positively to antibiotic treatment and recovered quickly.

15.     During her 2017 stay at the OHSU hospital, Ms. Getman was accompanied by her support person(s) and/or caregiver(s) to provide 24-hour care and assist with disability-related needs, including Ms. Getman's communication and daily living activities.

### The Global Coronavirus Pandemic Reaches Oregon and Plaintiff is Admitted to OHSU's Emergency Department

16.     Due to COVID-19, defendant put in place a "no-visitor" policy limiting visitor access to facilities.   The policy did not expressly allow for support persons to assist adults with

Page 4 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

physical disabilities, even when necessary to provide effective communication or assist with activities of daily living. The policy did make express exceptions for certain types of disabilities, including for patients with "significant developmental delay or dementia," as well as other patients without disabilities, including a child or baby, patients in labor or with a new baby, and/or patients during end-of-life care.

17.     On or around March 11, 2020, plaintiff received a dose of Spinraza as an intrathecal injection.

18.     On or around April 3, 2020, Ms. Getman developed an exceptionally painful headache and a high fever, symptoms she recognized as consistent with bacterial meningitis due to her 2017 experience with the condition.

19.     On or around midnight on the morning of April 4, 2020, Ms. Getman spoke to on-call doctors in OHSU's radiology department, who were responsible for administering the Spinraza treatment, as well as the OHSU emergency department triage, who recommended that she go to OHSU's emergency department due to the severity of her symptoms.  Plaintiff explained that due to her disability she needed 24-hour caregiver support were she to be admitted to the hospital. Both doctors declined to confirm that she would be allowed to be accompanied by her caregiver and/or a support person.

20.     Plaintiff and Mr. Foertmeyer arrived at the OHSU Emergency Department around 2:28 a.m. on April 4, 2010.  OHSU's Emergency Department triage nurse noted that plaintiff was accompanied by her caregiver.  Mr. Foertmeyer assisted in transferring plaintiff to a bed, turning off her ventilator, and managing her wheelchair.

///

Page 5 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

21.    During her time in the OHSU Emergency Department, and consistent with previous stays in the hospital, Mr. Foertmeyer assisted with Plaintiff's disability-related needs, including all of activities of daily living, such as the suctioning of her tracheostomy tube, using the bathroom off the side of the bed into a bedpan, eating, drinking, taking pills, and frequent repositioning.

22.    Prior to plaintiff being admitted to the hospital, Mr. Foertmeyer also accompanied plaintiff during her lumbar puncture, which took place in the OHSU hospital.  Mr. Foertmeyer moved through the hospital wing from the Emergency Department to Radiology with plaintiff and assisted plaintiff with lifting her from the bed to the CT table.  He also assisted with placing her in the correct position so the radiologist could perform the lumbar puncture, and then transferred plaintiff back to the bed.

23.    Plaintiff was treated by OHSU Emergency Department doctor, John A. Thomas, M.D.  Dr. Thomas performed a review of plaintiff's medical records and chart as part of the medical treatment provided.  Dr. Thomas treated plaintiff for bacterial meningitis and admitted plaintiff to the OHSU hospital for further monitoring and continued management.

24.    Plaintiff also was treated by Melinda Ruberg, M.D.  Plaintiff expressed her fear to Dr. Ruberg of being admitted to the hospital without Mr. Foertmeyer and had confirmed that she and Mr. Foertmeyer had quarantined at home for three weeks prior to admission.

25.    Although Mr. Foertmeyer was permitted to accompany plaintiff while she was in the OSHU Emergency Department, plaintiff was informed that if she were to be admitted to the OHSU hospital, Mr. Foertmeyer would be prohibited from accompanying her and providing support in the hospital due to defendant's no-visitor policy.

///

Page 6 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

26.     Plaintiff opposed being admitted to the hospital without consideration of an accommodation for her disability. She continually and repeatedly requested a policy modification that would allow her to be accompanied by her caregiver from any hospital staff that entered her room.  She was informed that she would have to wait until morning when the issue could be reviewed by an administrative employee.

27.     Around 3 a.m. on or about April 4, 2020, Ms. Getman received a COVID-19 test. She requested that Mr. Foertmeyer be tested as well to facilitate her request for an accommodation and/or modification to OHSU's policies to allow him to stay with her to provide caregiver tasks. Plaintiff's request was denied.  The Emergency Room day nurse made a joke in plaintiff's presence that if her COVID-19 test came back positive, at least she couldn't get up and run out of the hospital.

28.     Around 8:00 a.m. on April 4, 2020, Dr. Ruberg reported back to plaintiff from outside her door that the response from the hospital administration to her request to modify the policy to provide her equal access to OHSU's services, was a "hard no." Ms. Getman asked for an explanation of why administration was refusing to accommodate her disability but did not receive an explanation.

**Defendant Denies Plaintiff a Reasonable Modification to its No-Visitor Policy**

29.     At or around 3:37 pm on April 4, 2020, Ms. Getman was admitted to the OHSU hospital and at around 3:57 p.m. she was transferred to a room on the COVID-19 floor. Mr. Foertmeyer was not permitted to accompany her.

30.     Once admitted to the OHSU hospital, plaintiff continued to request a reasonable modification to OHSU's no-visitor policy. Plaintiff consistently explained to OHSU hospital

Page 7 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

physicians, nurses, and medical staff specifically how she was not getting her needs met. She requested that her caregiver be permitted to assist her, or, in the alternative, that OHSU provide another one-on-one caregiver who could stay with her and assist her with her meeting these needs.

31.    Upon her admission on April 4, 2020, plaintiff was examined by OHSU hospital physician, Timothy L. Herrick, M.D.  He noted that plaintiff desired to have as much say in her care as possible.  During this evaluation, plaintiff again requested a modification of the no-visitor policy.  Plaintiff's request was denied.  Instead of assisting plaintiff and meeting her disability-related needs, Dr. Herrick diminished those needs and told plaintiff that he believed she really just wanted Mr. Foertmeyer with her in the hospital for "other reasons."  She reminded Dr. Herrick that she had been quarantined with Mr. Foertmeyer and that he was the safest support person available to her.   She alternatively requested a one-on-one staff person to assist her.  She also requested an accelerated PICC line placement so that she could be discharged more quickly and return home where she could be fully supported.

32.    On or about April 5, 2020, plaintiff reported to Dr. Herrick that her needs were not being met due to the lack of her supper person and/or caregiver.  She reported to him that her pillow had slipped during the night, leaving her in an incredibly painful and uncomfortable position for several hours and that she couldn't call the nurse for assistance.  She specifically informed Dr. Herrick that her disability-related needs weren't being met by medical staff and she needed her caregiver or support person and asked if instead she could have a one-on-one staff person assist her.  Dr. Herrick failed to note in the medical records that plaintiff requested an accommodation, instead stating that plaintiff was missing her partner.

///

Page 8 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

33.     On or about April 6, 2020 on or around 12:28 a.m., plaintiff contacted her primary care provider's office at OHSU Center for Women's Health via MyChart, complaining that she was not being appropriately cared for and really needed someone who knows her very specific needs. Plaintiff stated that the last 48 hours were the worst in her life, she was not getting adequate rest, was "alone," had begged for one-on-one assistance, and that OHSU would not let her caregiver help her.  Plaintiff asked her OHSU primary care provider to advocate for her safety and for caregiver assistance.  Her primary care provider's nurse declined to assist plaintiff.

34.     A few minutes later, at around 12:41 a.m., and again at 11:33 a.m., plaintiff contacted her OHSU neurologist, Dr. Chafic Karam, M.D., via MyChart, complaining that she was not getting adequate medical care without her caregiver. She gave an example of how her needs were not being met: she had not been fed yet that day, April 6, even though it was 11:30 a.m. Plaintiff's neurologist contacted plaintiff's nursing staff on plaintiff's behalf.  Defendant still refused to provide a reasonable modification to its no-visitor policy.

35.     On or about April 6, 2020, at on or around 9:20 a.m., plaintiff had a consultation with an OHSU infectious diseases fellow, Sujeet Govindan, M.D.  Plaintiff expressed to Dr. Govindan that without her caregiver present, she was not getting her medical needs met, including pressure offloading and performance of ROM exercises.

36.     OHSU referred plaintiff's request for a reasonable modification to OHSU's Adult Relief Social Worker, Kathryn O'brien, LCSW.  On or about April 6, 2020, at or about 12:39 p.m., O'brien contacted plaintiff to discuss her request for a reasonable modification to the no-visitor policy.  Plaintiff reported to O'brien that, due to her caregiver not being present, her medical needs were not being met.  Plaintiff explained that she needed one-on-one care 24-hours a day and was

Page 9 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

not getting necessary care without her caregiver.

37.     As a result, O'brien spoke with an OHSU patient advocate, "Janna," and relayed plaintiff's complaints and ongoing request for a reasonable modification to OHSU's no-visitor policy.

38.     In turn, OHSU's patient advocate forwarded plaintiff's request for a reasonable modification of OHSU's no-visitor policy to Susan Yoder, Registered Nurse and OSHU Director of Patient Relations.    OHSU, by and through Yoder, again denied plaintiff's request for a reasonable modification.    Yoder did not offer any alternative modifications, such as providing one-on-one care by OHSU medical staff.

39.     Later that same day, at or around 9:17 p.m., plaintiff was examined by OSHU Family Medicine physician and associate professor, Jessica Flynn, M.D.    Plaintiff again expressed frustration to Dr. Flynn that she was unable to have her caregiver present with her in the hospital.

40.     On or about April 7, 2020, at or around 8:53 p.m., plaintiff was again examined by Dr. Flynn.    Plaintiff continued to complain and express frustration that OHSU was refusing to allow her to have her caregiver present.

41.     Between April 4, 2020 and April 7, 2020, on information and belief, several family members and community advocacy organizations advocated on plaintiff's behalf and contacted OHSU patient advocates to attempt to assist plaintiff in obtaining a modification of OHSU's no-visitor policy with no success.

42.     Plaintiff was discharged from OHSU on April 8, 2020. Her discharge records noted that plaintiff experienced significant frustration with OHSU's strict no-visitor policy and acknowledged that the policy did not permit Mr. Foertmeyer to be present with plaintiff in the

Page 10 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

hospital, despite that he provided the majority of plaintiff's specialized medical care at plaintiff's home.

43.     At all relevant times, OHSU never permitted plaintiff to have caregiver support during her stay in the OHSU hospital.

44.     On information and belief, OHSU did in fact make exceptions to its no-visitor policy for certain groups, including patients with "significant developmental delay or dementia," as well as other patients without disabilities, including a child or baby, patients in labor or with a new baby, and/or patients during end-of-life care.  Because OHSU easily made exceptions for others, accommodating plaintiff would not have posed an undue burden or expense on defendant, fundamentally altered defendant's services, or posed an undue threat or risk to plaintiff or others.

### The Oregon Legislature requires Hospitals to allow
### Support Persons and OHSU Changes Its Policy

45.     Prior to the passage of SB 1606, on information and belief, OHSU made no changes to its visitor policy for individuals with physical disabilities who needed a caregiver and/or support person for disability-related needs while admitted in the hospital, despite federal law requiring healthcare entities like defendant to provide reasonable modifications to persons with disabilities. On information and belief, OHSU changed its no-visitor policy only to comply with Senate Bill 1606.  Because Oregon law could be amended or changed at any time, an order to comply with federal law is required in order to ensure OHSU complies with its obligations under federal law.

### Tort Claim Notice

46.     Plaintiff sent defendant timely notice of plaintiff's intent to bring a claim for damages pursuant to ORS 30.275 on or around September 17, 2020 via certified mail, return

Page 11 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

receipt, which was received by defendant no later than September 24, 2020.

**Injury and Future Harm**

47.     During plaintiff's stay at the OHSU hospital from April 4, 2020 to April 8, 2020, staff and nurses failed to provide Ms. Getman the necessary support that Mr. Foertmeyer would have been able to provide Ms. Getman as Ms. Getman's caregiver.

48.     Without her caregiver present to assist plaintiff with proper repositioning, plaintiff was left in uncomfortable positions for hours and was repositioned at most two times a day, instead of being repositioned every 15 minutes as is necessary for her to avoid severe joint pain.

49.     Without her caregiver present to assist plaintiff with toileting, plaintiff was unable to use her preferred method of urinating involving a female urinal and bedpan. Instead, she was assisted by strangers in using a "pure wick" device, a piece of foam pressed between her labia and attached to a suction machine. This was humiliating to Ms. Getman and ultimately led to a yeast infection because it was not properly cleaned and changed regularly enough.

50.     Without her caregiver present to assist plaintiff with eating and drinking, plaintiff struggled to get adequate food and nutrition during her stay and was forced to strategize about what meal options she could consume as quickly as possible whenever a nurse was available. The floors she stayed on during her visit were very busy and frequently plaintiff had to go without a meal or was unable to finish eating because her nurses did not have time to assist her.

51.     Without her caregiver present to assist her with tracheostomy care, the necessary suctioning and other maintenance was often delayed and/or completed in a manner that caused plaintiff pain and irritation to her throat, which further communicating effectively nearly impossible.

Page 12 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

52.    Without her caregiver present to assist her with communicating, plaintiff was unable to effectively communicate with doctors, nurses, and medical staff.

a.    Plaintiff was unable to communicate to staff regarding her medical needs, including the proper positioning she needed and how to best move her without hyperextending her contractures and causing her significant pain.

b.    Plaintiff was unable to answer telephone calls from her doctors or nurses, which delayed her medical care.  Ms. Getman missed opportunities to speak with doctors doing their rounds, and as a result the home infusion team was unable to timely arrange for her to be discharged to complete her antibiotics treatment at home, and the social work team was unable to timely address her concerns about how her needs were not being met.

c.    Ms. Getman's inability to speak with medical staff over the phone was particularly problematic.  Due to the need to ration personal protection equipment, OHSU doctors and others were communicating with patients as much as possible by phone instead of physically visiting their rooms.

d.    Plaintiff was left at times completely unable to alert the nurses that she needed assistance.  For example, as described above, plaintiff woke up because she needed to have her tracheostomy suctioned to clear the tube so that she could breathe safely. She had shifted during her sleep, however, and her pillow slipped.  She could no longer reach the call button the nurse had placed for her. Because of her position, she was also unable to speak loudly enough to voice-activate her cell phone to call for assistance. This incident left her with lung pain and difficulty breathing for several hours.

///

Page 13 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

53.     Defendant's actions have caused plaintiff non-economic damages, including but not limited to pain and suffering, emotional distress, and humiliation.

54.     Due to plaintiff's medical conditions, she is likely to need hospital care in the future. Plaintiff would, in the absence of continued discrimination and mistreatment of the type described above, seek that care at OHSU.

55.     Unless enjoined, defendant will continue to engage in the unlawful acts of discrimination described above. Plaintiff has no adequate remedy at law. Therefore, plaintiff is entitled to injunctive relief.

56.     Plaintiff has mitigated her damages.

**FIRST CLAIM FOR RELIEF**
**Disability Discrimination under Section 504 of the Rehabilitation Act**
**29 U.S.C. § 794**

57.     Plaintiff realleges each and every paragraph above and incorporates the same herein.

58.     On information and belief, defendant receives federal financial assistance, including payments by Medicare and Medicaid, research and other grants, and support from other federal programs.

59.     At all relevant times, plaintiff had a physical impairment that substantially limited a major life activity.

60.     At all relevant times, plaintiff was qualified to receive health services and treatment from defendant.

61.     At all relevant times, defendant knew or should have known of plaintiff's disability and disability-related need for accommodation and modification of defendant's policies.

Page 14 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

62.    Defendant unlawfully discriminated against plaintiff on the basis of plaintiff's disability, in one or more of the following ways:

a.    Excluding plaintiff from participation in and/or denying plaintiff the benefits of the services, programs, and/or activities of defendant's services, programs, and/or activities;

b.    Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary provide plaintiff full and equal access to defendant's services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by defendant;

c.    Failing to provide as equally an effective method of communication as is provided to other patients at defendant's health-care facility; and

d.    Otherwise subjecting plaintiff to discrimination on the basis of disability.

63.    Defendant acted with deliberate indifference to plaintiff's civil rights, mental health, and welfare.

64.    Plaintiff is entitled to equitable relief and compensatory damages.

65.    Pursuant to 42 U.S.C. § 1988(c) and 29 U.S.C. § 794a(b), plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements incurred in prosecuting this claim.

///

///

///

Page 15 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

## SECOND CLAIM FOR RELIEF
### Disability Discrimination under Title II of the ADA
### 42 U.S.C. § 12132

66.     Plaintiff realleges each and every paragraph above and incorporates them herein.

67.     At all material times, defendant was an "instrumentality of the state" and therefore a public entity subject to the Title II of the ADA.

68.     At all relevant times, plaintiff had a physical impairment that substantially limited a major life activity.

69.     At all relevant times, plaintiff was qualified to receive health services and treatment from defendant.

70.     At all relevant times, defendant knew or should have known of plaintiff's disability and disability-related need for accommodation.

71.     Defendant unlawfully discriminated against plaintiff on the basis of plaintiff's disability, in one or more of the following ways:

a.     Excluding plaintiff from participation in and/or denying plaintiff the benefits of and equal access to defendant's services, programs, and/or activities;

b.     Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary provide plaintiff full and equal access to defendant's services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by defendant;

c.     Failing to provide as equally an effective method of communication as is provided to other patients at defendant's health-care facility; and

Page 16 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

d.    Otherwise discriminating against plaintiff on the basis of her disability.

72.    Defendant acted with deliberate indifference to plaintiff's civil rights, mental health, and welfare.

73.    Plaintiff is entitled to equitable relief and compensatory damages.

74.    Pursuant to 42 U.S.C. § 12205, plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements incurred in prosecuting this claim.

## THIRD CLAIM FOR RELIEF
### Disability Discrimination under the
### Patient Protection and Affordable Care Act (ACA)
### 42 U.S.C. § 18116

75.    Plaintiff realleges each and every paragraph above and incorporates them herein.

76.    At all material times, on information and belief, defendant receives federal financial assistance provided or made available by the United States Office of Health and Human Services, including tax credits under the ACA, payments by Medicare and Medicaid, research and other grants, and support from other federal programs.

77.    On information and belief, in applying for such federal financial assistance, defendant made assurances that its healthcare program and activities would be operated in compliance with the non-discrimination requirements under the ACA.

78.    At all relevant times, plaintiff had a physical impairment that substantially limited a major life activity and was qualified to receive health services and treatment from defendant.

79.    At all relevant times, defendant knew or should have known of plaintiff's disability and disability-related need for accommodation.

///

Page 17 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

80.    Defendant, who operates a hospital as well as other medical centers and academic training programs for medical professionals, is a health program or activity as defined by the ACA.

81.    At all relevant times, plaintiff had a physical impairment that substantially limited a major life activity and at all times, with or without reasonable accommodations, met the essential eligibility requirements for the receipt of aid, benefits, or services from defendant.

82.    At all relevant times, defendant knew or should have known of plaintiff's disability and disability-related need for accommodation.

83.    Defendant unlawfully discriminated against plaintiff on the basis of plaintiff's disability, in one or more of the following ways:

a.    Excluding from participation in and/or denying the benefits of defendant's health program or activity;

b.    Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary to avoid discrimination in defendant's services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by defendant;

c.    Failing to provide as equally an effective method of communication as is provided to other patients at defendant's health-care facility; and

d.    Otherwise discriminating against plaintiff on the basis of her disability.

84.    Defendant acted with deliberate indifference to plaintiff's civil rights, mental health, and welfare.

85.    Plaintiff is entitled to equitable relief and compensatory damages.

Page 18 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

86.    Defendant acted intentionally, willfully, and in disregard for the rights of others.

87.    Pursuant to 42 U.S.C. § 18116(a), 45 C.F.R. § 92.301 (2016), and the enforcement mechanisms of Section 504 of the Rehabilitation Act, including 42 U.S.C. § 1988(c) and 29 U.S.C. § 794a(b), plaintiff is entitled to her reasonable attorney fees, costs, expert witness fees, and disbursements incurred in prosecuting this claim.

## FOURTH CLAIM FOR RELIEF
### Disability Discrimination under ORS 659A.142(4)

88.    Plaintiff realleges each and every paragraph 1 through 56 above and incorporates them herein.

89.    Defendant is a place of public accommodation under ORS 659A.142.

90.    At all relevant times, plaintiff had a physical impairment that substantially limited a major life activity.

91.    At all relevant times, plaintiff was qualified to receive health services and treatment from defendant.

18.    In violation of ORS 659A.142(4), Defendant, through its agents, made distinctions, discrimination or restrictions because of Plaintiff's disability by doing the following

    a.    Excluding from participation in and/or denying the benefits of defendant's health program or activity;

    b.    Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary to avoid discrimination in defendant's services, programs, or activities, and when such modifications would not be unduly burdensome and would not

Page 19 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

fundamentally alter the nature of services provided by defendant;

   c.   Failing to provide as equally an effective method of communication as is provided to other patients at defendant's health-care facility; and

   d.   Otherwise subjecting plaintiff to discrimination on the basis of disability.

92.   Plaintiff is entitled to equitable relief, compensatory damages and reasonable attorney fees, costs, expert witness fees, and disbursements incurred in prosecuting this claim under ORS 659A.885 and ORS 20.107.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court provide trial by jury on all claims triable by jury and a judgment providing the following relief:

1.   On Plaintiff's Fourth Claim for Relief, awarding plaintiff her noneconomic damages in an amount to be determined at trial;

2.   Awarding plaintiff her reasonable attorney's fees, costs, expert witness fees, and disbursements;

3.   An order that:

   a.   Requires defendant to provide plaintiff with reasonable modifications of its hospital policies, including any current or future no-visitor policy, if necessary to provide plaintiff full and equal advantages and privileges to defendant's health services;

   b.   Requires defendant to create a written accommodation plan placed in plaintiff's medical records that allows plaintiff's support person to attend all

Page 20 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

medical appointments and procedures at all OHSU clinics, in the OHSU emergency department, and the OHSU hospital to assist plaintiff with effective communication and/or her daily living tasks, such as eating, toileting, repositioning, or disability-related needs.

c.    Requires defendant to have a Section 504/Title II/Section 1557 disability coordinator on site to coordinate and address patient requests for reasonable modifications of policies during a plaintiff's hospital stay;

d.    Requires training of all hospital management responsible for granting or denying requests for reasonable modifications of the legal requirements pertaining to reasonable modifications under Title II of the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the ACA and ORS 659A.142; and

e.    Requires training of all hospital management on the rights of persons with disabilities to have a support person and/or caregiver present if needed to assist that person with disability-related tasks.

4.    Awarding plaintiff pre-judgment interest on all damages at the highest rate allowed by law; and

5.    Granting such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff demands trial by jury in this action on all issues triable by a jury.

///

Page 21 – SECOND AMENDED COMPLAINT

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com

DATED this 18th day of May, 2022.

> SHENOA PAYNE ATTORNEY AT LAW, P.C.
>
> By: *s/ Shenoa L. Payne*
> Shenoa L. Payne, OSB No. 084392
> 735 SW First Ave, Ste 300
> Portland, Oregon 97204
> (503) 914-2500
> spayne@paynelawpdx.com
>
> LAW OFFICE OF MATTHEW C. ELLIS
>
> By: *s/ Matthew C. Ellis*
> Matthew C. Ellis, OSB No. 075800
> 621 SW Morrison St, Ste 1025
> Portland, Oregon 97205
> (503) 345-5497
> matthew@employmentlawpdx.com
>
> *Attorneys for Plaintiff*

SHENOA PAYNE
ATTORNEY AT LAW
735 SW FIRST AVE, SUITE 300
PORTLAND, OR 97204
(503) 914-2500
www.paynelawpdx.com